FILED
2011 Mar-04  AM 08:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ANNETTE MARIE BUSHAW,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case. No.: 5:09-CV-2608-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

Plaintiff, Annette Marie Bushaw, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.    Proceedings Below**

Plaintiff filed her application for DIB on April 26, 2006, alleging a disability onset date of January 16, 2004. (R. 9, 17, 80-82). On July 26, 2006, Plaintiff's application was denied initially. (R. 9, 64). At Plaintiff's request, an administrative hearing was conducted before Administrative Law Judge ("ALJ") Robert L. Hodges on December 27, 2007 in Huntsville, Alabama. (R. 6-17). The ALJ denied Plaintiff benefits by a decision dated January 24, 2008. (R. 6-17). Both Plaintiff and Vocational Expert ("VE") John W. McKinney III testified at the hearing. (R. 9). Plaintiff was represented by Kenneth D. Hampton at the hearing. (R. 9).

In the January 24, 2008 decision, the ALJ determined that Plaintiff was not eligible for DIB because she was not under a "disability" as defined by the Act from January 16, 2004 through the date of decision. (R. 17). After the Appeals Council denied Plaintiff's request for review on November 3, 2009, (R.1-4), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was forty-nine years old, a "younger" individual under the statutory framework, and had completed school through the tenth grade, a "Limited Education" as defined under the statutory framework. (R. 33, 38). She has past relevant work experience in jobs as a counter sales clerk at a retail glass company and as a meat packer at Hallsy Grocery, classified as medium and semi-skilled and medium and unskilled, respectively. (R. 38-40, 59, 94-95). According to Plaintiff, she has been unable to engage in substantial gainful activity since January 16, 2004, when she became unable to work due to cervical problems, carpal tunnel syndrome, fibromyalgia, shoulder problems, and mental disorders. (*See* Doc. #9 at 2). The ALJ found that Plaintiff has the following severe impairments: status post anterior cervical diskectomy and fusion times two; status post bilateral carpal tunnel release surgeries; status post right rotator cuff repair; fibromyalgia syndrome; major depressive disorder; post-traumatic stress disorder; and migraines. (R. 11).

Plaintiff testified that she sleeps for about five hours a night but that sleep is interrupted by pain in her hands and neck. (R. 41). She describes the neck pain as her head feeling too heavy for her neck and "it sends a pain down my neck into my right shoulder blade." (R. 43). She experiences sharp pain in her neck if she picks up something too heavy and also experiences a general nagging pain in her neck every day. (R. 44). The nagging pain increases to about a seven out of ten when

she stands up or looks down, or when she does any repetitive lifting.  (R. 44-45).  When the pain

starts getting worse, Plaintiff's hands get a burning sensation from her wrists through her fingertips.

(R. 45, 46).  When the burning sensation occurs, Plaintiff cannot continue what she was doing

because it will cause her to drop things; at times she sits and cries with the pain.  (R. 46).  These

sensations have gotten worse since Plaintiff had her last neck surgery and she rates the pain a nine

on a scale of one to ten.  (R. 46-47).

Plaintiff had surgery on her right shoulder in March 2005 but she continues to have problems

with that shoulder.  (R. 47).  Her shoulder knots up and she gets a burning sensation; there is a "spot"

on her shoulder blade all of the time, but the pain in her shoulder only gets bad when she engages

in repetitive motions.  (R. 47).  She rates her shoulder pain, with medication, to be a five or six on

a scale of one to ten.  (R. 48).

Plaintiff has also been diagnosed with fibromyalgia, which exhibits with fatigue and muscle

aches.  (R. 48).  The fibromyalgia, combined with the pains described above, makes it impossible

on some days for Plaintiff to "make [her]self go."  (R. 48-49).  Plaintiff does not know if the

fibromyalgia is causing the pains in her shoulder, neck, and hands.  (R. 49).  However, Plaintiff does

know that it is the fibromyalgia when her hands just ache and sharp pains run across the top of them.

(R. 49).  Plaintiff further testified that the fatigue has changed her whole life, that she is so tired that

it is hard to put one foot in front of the other.  (R. 50).  She indicated that type of fatigue occurs once

or twice every couple of weeks and lasts for a day or two.  (R. 50).  Plaintiff testified the only thing

she can do to combat the fatigue is to take her medicine, lay down, and relax.  (R. 50).

Plaintiff also testified that she is losing strength in her arms.  (R. 50).  She can stand for

fifteen minutes at a time and can walk 30 feet before resting.  (R. 51).  When she sits, Plaintiff can

not get comfortable unless her legs are parallel to the ground; she can sit with her feet down for thirty minutes.  (R. 51).  She also suffers from depression (and that has gotten worse in the last year and a half, particularly after her surgeries), a condition that reportedly remains with her at all times.  (R. 52-53).  She attributes the increased depression to the fact that she is always in pain and no longer enjoys doing the things that she used to do.  (R. 52).  There are some days when Plaintiff experiences vegetative symptoms, staying in bed all day.  (R. 53).

Plaintiff is able to do some housework, including laundry, preparing meals, and grocery shopping, but she does not do any gardening.  (R. 42-43).  She also participates in a pool league once a week, generally sitting at a table and keeping score but sometimes shooting as needed for the league.  (R. 57-58).

## II.    ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working in a substantial gainful activity.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities; that is, the Commissioner must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."   Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work.  The claimant's RFC consists of what the claimant can do despite her impairment.  Finally, at the last step of the sequential evaluation process, the Commissioner determines whether the claimant's age, education,

and past work experience prevent the performance of any other work.  In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on January 16, 2004.  (R. 11).  The ALJ found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which he deemed to be severe: status post anterior cervical diskectomy and fusion times two; status post bilateral carpal tunnel release surgeries; status post right rotator cuff repair; fibromyalgia syndrome; major depressive disorder; post-traumatic stress disorder; and migraines.  (R. 11).  Nevertheless, he determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  (R. 13). The ALJ found that Plaintiff retained the RFC to perform work consistent with the limitations

imposed by examining physician Dr. Keith Charles Anderson[1] and state agency psychological consultant Dr. Frank Nuckols.[2]  (R. 14).  The ALJ concluded that Plaintiff was capable of performing her past relevant work as a meat packer as that work does not require the performance of work-related activities precluded by Plaintiff's RFC.  (R. 16).

The ALJ elicited testimony from VE John McKinney at the hearing, and posed several hypothetical questions to him regarding different scenarios of functional capacity and pain level.  (R. 58-61).  The VE identified Plaintiff's prior work as "medium" in level of required exertion and "unskilled to semiskilled," with no transferable skills to sedentary work.  (R. 59).  In response to the ALJ's question regarding whether an individual experiencing pain at no more than a moderate level with her ability to respond to the mental demands of work as assessed by Dr. Nuckols, the VE testified that such an individual would not be able to perform the past relevant work of retail clerk

---

[1] Dr. Anderson performed a functional capacity evaluation of Plaintiff on September 28, 2005. Dr. Anderson found that Plaintiff had the following work restrictions:
1.   Lifting: Low lift (floor to knuckle) occasional 40 pounds and frequent 20 pounds. Mid lift (knuckle to shoulder) occasional 40 pounds and frequent 20 pounds. High lift (shoulder and above) occasional 15 pounds and frequent 5 pounds.
2.   Carrying: Occasional 60 pounds and frequent 30 pounds.
3.   Pushing: Occasional 40 pounds and frequent 20 pounds.
4.   Pulling: Occasional 40 pounds and frequent 20 pounds.
5.   Reaching Immediate: Constant left and right.
6.   Reaching Overhead: Constant left.  Frequent right.
7.   Handling: Frequent left and right.
8.   Finger Dexterity: Constant left and right.
(R. 12-13).

[2] Dr. Nuckols, the state agency psychiatric consultant, reviewed the record on July 25, 2006.  He found that Plaintiff can understand, remember, and complete short, simple, one-to-two step tasks, but not those that are longer or more detailed.  He found that she may be able to complete more complex tasks if they are broken down into smaller, simpler sections to be completed, and is likely to do best working with a small number of familiar co-workers, and supervision and criticism should be given in a manner that is supportive and non-threatening.  (R. 13).

but could perform a meat packing job. (R. 59-60). The VE testified that a different conclusion would be reached if he were to assume Plaintiff's testimony to be fully credible as to her pain, fatigue, and necessity to lie down for one or two hours a day, or prop her feet up above chair level from significant portions of the day; in such scenario, there would not be any type of work Plaintiff could perform or maintain (R. 60).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 8, at 15). Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ failed to give proper weight to the opinions of the treating psychiatrist and psychologist in violation of both the prior cases of the Eleventh Circuit and the Social Security regulations; and (2) the ALJ failed to properly consider the combined impact of Plaintiff's impairments on the pain and other symptoms that she experiences. (*See* Doc. # 9, at 8).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

Against that backdrop of the applicable standards, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ appropriately weighted the opinions of Plaintiff's treating psychiatrist and psychologist and properly considered the combined impact of impairments when he found that Plaintiff was not under a "disability" at any time prior to the decision.

### A.     Weight Accorded to the Opinion of the Treating Psychiatrist and Psychologist

Plaintiff contends that the ALJ improperly discounted the opinion of her treating psychiatrist, Dr. N. Jane Roark, and her treating psychologist, Dr. Gary Huckaby, when reaching his disability conclusion. To the contrary, the court finds that the ALJ applied proper legal standards when

8

weighing the evidence submitted by the treating physicians, and his conclusions are supported by substantial evidence.

The weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source.[3]  *See* 20 C.F.R. § 416.927(d).  The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).  Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record); *see also Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) ("Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary.").  Nonetheless, if the ALJ has

---

[3] "Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(5).

failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440; *see also Lamb*, 847 F.2d at 703 ("The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician.").

Plaintiff's brief generally takes issue with the fact that the ALJ adopted the assessment of Dr. Nuckols, the state agency consultant and therefore "rejected" the assessments of Plaintiff's treating psychiatrist and treating psychologist, both of whom gave Plaintiff a Global Assessment of Functioning ("GAF") score of 50.[4]  (*See* Doc. #9 at 10).  On June 19, 2006, Dr. Roark diagnosed Plaintiff with "Major Depression" with the GAF score "at present" of 50. (R. 476).  Dr. Roark noted that Plaintiff's anxiety was made worse by chronic pain and a decrease in her physical ability to function. (R. 476).  On June 27, 2006, Dr. Roark noted Plaintiff's "psychomotor slowing, fatigue, and flat depressed affect." (R. 471).  Dr. Roark further noted that "[g]iven that during the process of application [for SSI benefits] its unusual for patients to be motivated to improve symptoms at a

---

[4] A GAF score of 41 to 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *See* DSM-IV at 32-34.  However, a GAF score of 50 does not necessarily translate into functional limitations that preclude an individual from working.  "A GAF score is not an assessment of a claimant's ability to work, but a global reference scale to aid in the treatment of an ongoing condition." *Jiles v. Commissioner*, 2006 WL 4402937, No. Civ. A. 05-G-0861-S at *2, n.1 (N.D. Ala. Dec. 11, 2006); *see also Smith v. Commissioner*, 482 F.3d 873, 877 (6th Cir. 2007) ("Even assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude [Plaintiff] from having the mental capacity to hold at least some jobs in the national economy."); *Seymore v. Apfel*, 1997 WL 755386, No. 97-5068 at *2 (10th Cir. Dec. 8, 1997) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work.").  In fact, neither Dr. Roark nor Dr. Huckaby state that the GAF score was based on the potential ability or inability of Plaintiff to work.  (R. 476, 515).

time when they are trying to get reimbursement for being so ill." (R. 471).  These findings were bolstered by Dr. Roark's interviews with Plaintiff's husband on July 3, 2006, which led to an assessment of "generalized anxiety disorder complicated for the past year with a major depression characterized by interpersonal sensitivity, negative self-talk, self-loathing and excessive guilt coupled with neurovegetative signs and symptoms." (R. 470).  On July 24, 2006 Dr. Roark found Plaintiff "to be more animated, still appearing haggard and anxious.  Thoughts are coherent and goal directed in both structured and unstructured settings.  A full range of affect is elicited, appropriate to content." (R. 469).  The last record from Dr. Roark on a Mental Status Exam on August 7, 2006 revealed a "depressed and angry" affect but no psychomotor slowing and  "significant improvement in energy and interpersonal effectiveness" with no further appointments scheduled.  (R. 468).

Plaintiff's treating psychologist was Gary C. Huckaby.  Dr. Huckaby had been seeing Plaintiff since May 16, 2006 with "suicidal ideations, persistent state of anxiety, feelings of frustration, and depression." (R. 514).  On November 11, 2007, Dr. Huckaby noted that even with treatment, Plaintiff "has been unable to raise her functioning to an acceptable level." (R. 514).  She was diagnosed with "Major Depressive Disorder" and assigned a GAF score of 50.  (R. 514).

Nothing in the record indicates that the ALJ failed to give considerable or substantial weight to Plaintiff's treating psychiatrist and psychologist.  *See Magill v. Commissioner*, 147 Fed. Appx. 92, 94-95 (11th Cir. 2005) ("These opinions do not contradict the ALJ's determination that [Plaintiff] is markedly limited in performing detailed or complex tasks and has some limitations with regard to getting along with co-workers, but at the same time has the Residual Functioning Capacity to perform a limited range of light work."); *Henry v. Barnhart*, 156 Fed. Appx. 171, 174 (11th Cir. 2005) ("The ALJ did not explicitly state what weight he gave to [the treating doctor's] opinion.

11

However, the ALJ properly rejected [the treating doctor's] interpretation of the I.Q. scores, finding that [Plaintiff] was actually functioning at a higher level."). To the contrary, the ALJ found that Plaintiff suffered from major depressive disorder. (R. 11). The ALJ did not criticize outright the psychiatrist and psychologist's opinions on Plaintiff's GAF scores (R. 13), but the GAF score is merely a snapshot opinion regarding an individual's symptoms or possible difficulty in social, occupational, or school functioning at the time of the evaluation.[5] *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. 2000) (DSM-IV). Thus, even if Plaintiff's GAF scores could be interpreted as establishing the limitations for which she contends, they do not indicate that she had those limitations for any consecutive twelve month period. *See* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509. Indeed, the ALJ considered ample evidence reflecting that Plaintiff was not significantly limited by mental impairments during the intervening time period between her two GAF scores. (R. 467-76, 514-22). By the time of her fourth appointment with Dr. Roark, Plaintiff's symptoms had improved significantly with improved energy and an ability to enjoy activities with her grandchildren. (R. 469). Plaintiff's last appointment with Dr. Roark was on September 11, 2006, at which time Dr. Roark noted that Plaintiff's medication had "been of some benefit in Plaintiff's symptoms of mood disorder." (R. 467). Plaintiff did not return for treatment with Dr. Roark, and Dr. Roark never recorded a GAF of 50 again after the initial assessment. (R. 467-76). Further, the treatment notes from Dr. Huckaby fail to provide any evidence to substantiate an on-going limitation as associated with a GAF score of 50. To the contrary, Dr. Huckaby encouraged Plaintiff to "do something" and

---

[5] *See* footnote 4, *supra*.

pursue activities such as gardening, hiking, canoeing, going to the beach, and going to a motorcycle event.  (R. 518).

Moreover, it is apparent from the entirety of the record that the ALJ was justified in concluding that Plaintiff's medical conditions do not render her with a low level of functioning during any extended period of time.  *See* 20 C.F.R. § 404.1529(c)(3)(I).  Plaintiff plays pool in a league once a week, has dinner and plays cards with friends on the weekends, drives occasionally, shops for groceries, and performs household chores.  (R. 34, 42-44, 57, 114-16, 120, 121).  She looks up recipes and checks e-mail on the computer, maintains a small garden, cares for her cat and dog, and manages her checking account.  (R. 57, 114-15, 119).  She pays "much attention to her personal appearance."  (R. 114, 475).

It is axiomatic that although an ALJ may consider opinions from acceptable medical sources on such issues as a claimant's RFC and whether a claimant is disabled, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996).  The ALJ's opinion was guided by proper legal standards; the ALJ's findings indicate his conclusion that there was insufficient evidence of any mental limitations or restrictions to take into consideration when considering Plaintiff's capacity for work, and substantial evidence supports his finding that Plaintiff was not disabled for this reason.

### B.   Combined Impact of Impairments

Plaintiff's second argument for reversal of the ALJ's decision is that the decision fails to properly take into account the combined impact of impairments standard, including pain.  As Plaintiff asserts, "the failure to consider the combined impact of the impairments of pain and

depression with fatigue shows that the decision of the Commissioner is not supported by substantial evidence." (*See* Doc. #9 at 16).

The court acknowledges that it is well settled that the ALJ must consider the combined effects of all impairments in evaluating disability. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (finding that an ALJ who improperly discounted a claimant's subjective complaints of pain and dizziness did not give adequate consideration to the effect that the combination of exertional and non-exertional impairments had on the ability to work); *see also Walker*, 826 F.2d at 1001 (finding that "it is the duty of the . . . [ALJ] . . . to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (finding that the ALJ must address the degree of impairment caused by the "combination of physical and mental medical problems."). However, in his opinion, the ALJ clearly stated that the "claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 13). He also discussed Plaintiff's various diagnoses and the relevant evidence regarding her condition, specifically noting that none of the medical evidence demonstrated debilitating limitations. (R. 11-16). That there may be a cause-and-effect relationship between Plaintiff's mental and physical symptoms does not make any statement as to the overall severity of those symptoms. (R. 332-33, 352, 367, 427-28, 434, 480, 514); *see also* Doc. #9 at 17-18. The ALJ specifically noted that the combination of impairments was best reflected by Dr. Anderson's assessment, and adopted that finding in his RFC finding. (R. 14, 16). These findings are supported by substantial evidence and, contrary to Plaintiff's assertions, it is clear that the ALJ considered the combined effect of Plaintiff's impairments. *See Wheeler v.*

*Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (holding that the ALJ's statement that he considered the claimant's impairments in combination was sufficient to show that he had in fact considered the combined effects of the claimant's impairments); *see also Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that the ALJ's statement that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" evidenced consideration of the combined effects of claimant's impairments); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (reversing the district court's award of benefits and disagreeing with the district court's statement that the ALJ did not discuss the cumulative effects of claimant's impairments); *Sneed v. Barnhart*, 214 Fed. Appx. 883 (11th Cir. 2006) (noting that the ALJ can satisfy the duty of considering the combination of impairments by stating that he considered whether the claimant suffered from any impairment or combination of impairments).

## VI.  Conclusion

For all of these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this ____3rd____ day of March, 2011.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE